## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAITRIONA BRADY | : | CIVIL ACTION |
| | : | NO. 2:19-cv-05082-MAK |
| Plaintiff, | : | |
| -vs- | : | |
| | : | |
| THE MIDDLE EAST FORUM, | : | TRIAL BY JURY |
| | : | |
| | : | |
| Defendant. | : | DEFENDANT'S ANSWER WITH |
| | : | AFFIRMATIVE DEFENSES TO |
| | : | PLAINTIFF'S AMENDED COMPLAINT |

Defendant The Middle East Forum ("The Forum", "MEF", or "Defendant")[1], by counsel,

hereby file an Answer and Affirmative Defenses to the Amended Complaint filed by Catriona

Brady ("Plaintiff" or "Brady").

## I.        PARTIES

1.        Plaintiff, Caitriona Brady ("Plaintiff" or "Ms. Brady") is an adult individual who

resides in the Commonwealth of Pennsylvania.

**Answer:  Admitted in part, denied in part. Defendant admits that the plaintiff in
this action is Ms. Catriona Brady. Defendant is without knowledge as to Plaintiff's
residence and therefore the remainder of the allegation is denied.**

2.        Defendant, Middle East Forum ("MEF") is a business organization existing under

the laws of the Commonwealth of Pennsylvania with an address for the purposes of service 1650

Market Street, Suite 3600, Philadelphia, PA 19103.

**Answer:  Admitted.**

---

[1] Mr. Daniel Pipes, Mr. Gregg Roman, and Mr. Matthew Bennett were initially named as co-
defendants, but Plaintiff stipulated to their dismissal, without prejudice, on January 2, 2019.
Doc. No. 13

3.      Defendant, Daniel Pipes is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purpose of service at 1650 Market Street, Suite 3600, Philadelphia, PA 19103.

**Answer:  Denied.  Per the parties' stipulation entered on January 2, 2020 Plaintiff dismissed, without prejudice, Daniel Pipes from this action.  Therefore, it is denied that Mr. Pipes is a defendant in this action.**

4.      Defendant, Greg Roman is an adult individual who resides in the Commonwealth Of Pennsylvania with a business address for the purpose of service at 1650 Market Street, Suite 3600, Philadelphia. PA 19103.

**Answer:  Denied.  Per the parties' stipulation entered on January 2, 2020 Plaintiff dismissed, without prejudice, Gregg Roman from this action.  Therefore, it is denied that Mr. Pipes is a defendant in this action.**

5.      At all times relevant to this Civil Action, Defendant, Daniel Pipes, and Defendant, Greg Roman were employees of Defendant, The Middle East Forum, and held supervisory authority over Plaintiff, Caitriona Brady during Plaintiff's employment for Defendant.

**Answer:  Admitted in part, denied in part.  It is admitted that Mr. Pipes, Mr. Roman, and Mr. Bennett were employees of The Middle East Forum at times relevant to this action.  It is admitted that Mr. Pipes held supervisory authority over Plaintiff.  The remainder of this allegation is denied.**

6.      Defendant, Daniel Pipes is the President of The Middle East Forum and held supervisor authority over Plaintiff, Caitriona Brady.

**Answer:  Admitted in part, denied in part.  It is admitted only that Mr. Pipes is the President of the Middle East Forum and held supervisory authority over Plaintiff. It is denied that Mr. Pipes is a defendant in this action.**

7.      Defendant, Greg Roman is the Director of The Middle East Forum and held supervisor authority over Plaintiff, Caitriona Brady.

**Answer:  Denied.**

2

8.      When Defendant, Greg Roman's ability to work from or visit the office was curtailed, after the November 2018 meeting, Defendant, Daniel Pipes sent an email to the employees of the Middle East Forum to notify the staff that Matthew Bennett was acting supervisor of the Middle East Forum. Accordingly, from November 2018 through February 2019, Matthew Bennett was the supervisor of the Middle East Forum and second in charge behind Defendant, Daniel Pipes.

**Answer:  Denied.**

9.      This changed sometime around March 2019 when Defendant, Greg Roman resumed his position as Director of the Middle East Forum.

**Answer:  Admitted in part, denied in part. It is admitted that sometime in March 2019, Mr. Roman resumed some prior responsibilities. All other allegations in this paragraph are denied.**

## II.      <u>NATURE OF THE CASE</u>

10.     Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 20003-17 (amended in 1972.1978, by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); Title 43 PS Labor § 955, the Pennsylvania Human Relations Act. as amended. 43 P.S, §§ 951, *et. seq.* ("PHRC"), under the laws of the Commonwealth of Pennsylvania; and under the Philadelphia Fair Practices Ordinance, § 9-1100 *et. seq.* ("PFPO") and seeks damages to redress injuries Plaintiff suffered as a result of Defendants' discrimination, harassment, retaliation and the hostile work environment which ultimately led to Plaintiffs unlawful termination from her employment for Defendants. Accordingly. Plaintiff brings this Civil Action to redress injuries Plaintiff suffered as a direct result of violations of federal laws, the laws of the Commonwealth of Pennsylvania and the laws of the City of Philadelphia and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of her sex and gender, and forced to endure a

hostile work environment, and retaliated against by her employer for reporting such discrimination and harassment.

**Answer: Admitted in part, denied in part. It is admitted only that Plaintiff brings claims under Title VII of the Civil Rights Act of 1964. It is denied that Plaintiff is bringing claims under the PHRC and PFPO. Defendant further denies the remainder of this allegation and deny that Plaintiff was subject to any of the conduct complained of and deny all liability.**

### III.    JURISDICTION AND VENUE

11.     This action involves a Question of Federal Law under Title VII of the Civil Rights Act of 1964. The honorable Court also has supplemental jurisdiction over the Commonwealth Law and Municipal Law Causes of Action.

**Answer: Denied. This allegation is a legal conclusion, and it is therefore deemed denied.**

12.     Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in the City of Philadelphia in the Commonwealth of Pennsylvania where the discrimination, harassment and hostile work environment complained of occurred.

**Answer: Denied. This allegation is a legal conclusion, and it is therefore deemed denied.**

13.     On or around June 20, 2019, Plaintiff, Caitriona Brady filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein. Plaintiff's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission and the Philadelphia Commission on Human Relations.

**Answer: Admitted.**

14.     Plaintiff, Caitriona Brady's claims under the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance are not yet ripe for suit. Plaintiff intends to amend her Complaint sometime after her claims under the Commonwealth of Pennsylvania and the City

of Philadelphia become ripe. This will occur one year after Plaintiff's Charge was dual filed.

Plaintiff includes the Counts below to provide notice of her claims under Commonwealth and

City antidiscrimination laws, however, Plaintiff understands that she may not pursue these claims

until sometime after July 2020.

> **Answer:  Admitted in part, denied in part. Admitted as to the fact that the aforementioned claims are not yet ripe for suit, denied as to the validity of the factual basis for these claims. Further, Defendant has no knowledge regarding Plaintiff's future plans to file additional claims and therefore denies these allegations.**

15.     On or about July 31, 2019, the EEOC issued and sent a Dismissal and Notice of

Rights to Plaintiff which required that Plaintiff file a civil action within ninety (90) days of

receipt of the Dismissal and Notice of Rights in order to preserve Plaintiff's rights under federal

laws.

> **Answer:  Admitted.**

16.     This action is hereby commenced within ninety (90) days of receipt of the

Dismissal and Notice of Rights which is dated and was sent July 31, 2019.

> **Answer:  Admitted.**

### IV.    <u>MATERIAL FACTS</u>

17.     Plaintiff, Caitriona Brady began her employment for Defendant, The Middle East

Forum ("MEF") sometime around May 2017

> **Answer:  Admitted**

18.     Plaintiff was hired and began her employment at MEF as an intern.

> **Answer:  Admitted**

19.     Today, Plaintiff, Caitriona Brady holds the position of Development Associate

and reports to supervisors, Defendant, Daniel Pipes and Defendant, Greg Roman.

> **Answer:  Denied.**

20.     All of the conduct and comments to which Plaintiff Caitriona Brady was subjected occurred during a period of time that extended until November 2018. The comments described listed below occurred from August 25, 2019 until November 2019. As Plaintiff filed her Charge of Discrimination June 20, 2019, all acts that occurred after August 25, 2019 have been timely exhausted and pled.

**Answer:  Denied.**

21.     Plaintiff claims violations of the continuous violations doctrine as Plaintiff was subjected to severe and pervasive discrimination and harassment in the workplace beginning sometime around January 2018 and continuing until November 2018.

**Answer: Denied. This allegation is a legal conclusion, and it is therefore deemed denied. All other allegations in this paragraph are denied.**

22.     Defendant Greg Roman began a campaign of sex and gender discrimination to which Plaintiff, Caitriona Brady was subjected. This campaign of sex and gender discrimination was severe and pervasive and occurred on a continuous basis from January 2018 until November 2018. Defendant, Greg Roman continued his campaign of sex and gender discrimination from sometime around January 2018 until November 2018 when Defendant, Greg Roman was forced to discontinue visiting the MEF headquarters.

**Answer:  Denied.**

23.     Defendant Greg Roman was forced to discontinue working at the MEF headquarters in Philadelphia because of the severe and pervasive discrimination and harassment to which he subjected Plaintiff, Caitriona Brady.

**Answer:  Denied.**

24.     Defendant, Caitriona Brady was part of a group of female employees whose reports of discrimination and harassment led to a meeting in November 2018. Pursuant to the

information reported by female staff including Plaintiff, Caitriona Brady, Defendant, Greg Roman was no longer permitted to work at or visit the MEF headquarters in Philadelphia.

**Answer:  Denied.**

25.     Defendant Greg Roman's campaign of sex and gender discrimination to which Plaintiff was subjected started sometime around January 2018 and continued until November 2018. This period is the continuous period during which Plaintiff, Caitriona Brady was subjected to a hostile work environment.

**Answer:  Denied.**

26.     The discrimination and harassment described in this First Amended Complaint did not stop and start. From January 2018 until November 2018 Defendant, Greg Roman initiated a campaign of continuous sex and gender discrimination to which Plaintiff, Caitriona Brady was subjected during her employment for Defendants.

**Answer:  Denied.**

27.     Plaintiff filed her Charge of Discrimination June 20, 2019. A theory predicated upon the continuous violations doctrine will include all acts that contributed to the hostile work environment as long as the last act occurred within the statutory period. Plaintiff's statute of limitations for filing her Charge of Discrimination under federal protections is three-hundred (300) days. Three-hundred (300) days prior to June 20, 2019 is August 25, 2018. Defendant, Greg Roman's continuous campaign of sexual harassment and abuse reached far beyond the August 25, 2018 statute of limitations and did not end until November 2018. Accordingly, Plaintiff, Caitriona Brady claims violations of the continuing violations doctrine and includes all acts of sexual harassment and abuse that occurred beginning January 2018 and continuing until November 2018.

7

**Answer: Admitted in part, denied in part.  It is admitted only that Plaintiff filed a Charge of Discrimination on June 20, 2019.  The remainder of this allegations is denied as Defendant denies all allegations of harassment and abuse.**

28.      Defendant, Greg Roman's comments and conduct may have started before the August 25, 2019 statutory period, however, the campaign of sex and gender discrimination continued without pause until November 2018 when Defendant, Greg Roman was forced to stop visiting Middle East Forum headquarters.

**Answer:  Denied.**

29.      Defendant, Greg Roman could no longer visit MEF headquarters because of the severe and pervasive sex and gender discrimination to which Plaintiff, Caitriona Brady was subjected on a continuous basis without pause from January 2018 until November 2018.

**Answer:  Denied.**

30.      Importantly, the only reason that Defendant, Greg Roman stopped the unwelcome sex and gender discrimination in November 2018 was because Defendant, Greg Roman was no longer allowed to visit or work at the MEF Philadelphia headquarters. This was directly because of the risk of harm that Defendant, Greg Roman's presence had related to the female staff. Defendant, Greg Roman was ordered to discontinue all visits to the MEF Philadelphia headquarters immediately in November 2018.

**Answer:  Denied.**

31.      Defendant, Greg Roman's campaign sex and gender discrimination only stopped when Plaintiff, Caitriona Brady and several coworkers reported Defendant, Greg Roman's severe and pervasive sex and gender discrimination. Defendant, Greg Roman was forced to discontinue all visits to MEF headquarters as a direct result of his continuous and nonstop campaign of sexual harassment and abuse to which Plaintiff, Lisa Barbounis was subjected by Defendant, Greg Roman.

**Answer:  Denied.**

32.     Defendant, Greg Roman is very high up in the organization of the Middle East

Forum and currently holds the position of Director of the Middle East Forum.

**Answer:  Admitted in part, denied in part. Defendant admits that Mr. Roman currently holds the position of Director of the Middle East Forum.**

33.     At all times relevant to this civil action Defendant, Greg Roman held the position

of Director of the Middle East Forum.

**Answer:  Admitted.**

34.     As the Director of the Middle East Forum, Defendant, Greg Roman was the

penultimate person in charge of the Middle East Forum. Accordingly, Defendant, Greg Roman

along with Defendant, Daniel Pipes, ran and managed the Middle East Forum.

**Answer:  Denied.**

35.     Defendant, Greg Roman was and continues to be so high up in the organization

that the only person to whom Defendant, Greg Roman reports is Defendant, Daniel Pipes.

**Answer:  Admitted in part, denied in part.  It is admitted only that Mr. Roman reports to Mr. Pipes.  The remainder of this allegation is denied.**

36.     Defendant, Greg Roman is considered by Defendant, Daniel Pipes to be crucial to

the operations and success of the Middle East Forum.

**Answer:  Denied.**

37.     Defendant, Greg Roman has the ability to create policy for the Middle East

Forum.

**Answer:  Denied.**

38.     Defendant, Greg Roman must be considered a proxy for MEF and all

discrimination and harassment to which Plaintiff, Caitriona Brady was subjected including the

discrimination and harassment based upon sex and gender, and retaliation by Defendant, Greg Roman should be held to a proxy-liability standard.

**Answer:  Denied.**

39.    Defendant, Daniel Pipes is currently the President of the Middle East Forum. There are no individuals employed by the Middle East Forum who hold positions above Defendant, Daniel Pipes.

**Answer:  Admitted.**

40.    Defendant, Greg Roman, and Defendant, Daniel Pipes are responsible for developing, enacting, and enforcing all policies, procedures, protocols employed to operate the Middle East Forum.

**Answer:  Denied.**

41.    At all times relevant to this Civil Action Defendant, Daniel Pipes was the President of MEF.

**Answer:  Admitted.**

42.    Defendant, Greg Roman is a large man and uses his size and height in his violent and aggressive interactions with female employees who Defendant, Greg Roman supervised.

**Answer:  Denied.**

43.    Defendant, Greg Roman used his size to intimidate and sometimes overpower female employees who Defendant, Greg Roman supervised with proxy-authority as Director of the MEF.

**Answer:  Denied.**

44.    Defendant, Greg Roman sexually assaulted Plaintiff, Caitriona Brady's coworker, Patricia McNulty at the AIPAC conference which occurred in Washington D.C., when

Defendant, Greg Roman violently yanked Patricia McNulty across the couch, onto his lap, and whispered inappropriate, unwelcome sexual advances in Ms. McNulty's ear.

**Answer:  Denied.**

45.     Defendant, Greg Roman subjected Plaintiff, Caitriona Brady to discrimination and harassment based upon Plaintiff's sex and gender until November 2018 when Defendant, Greg Roman was forced to discontinue working from the MEF office due to a large number of reports of sexual harassment, sexual misconduct, and sex and gender discrimination involving Defendant, Greg Roman and the female staff of the Middle East Forum.

**Answer:  Denied.**

46.     Plaintiff, Caitriona Brady was subjected to discrimination and harassment based upon her sex and gender by Defendant, Greg Roman when Defendants brought Defendant, Greg Roman back to the Middle East Forum and allowed Defendant, Greg Roman to continue his position as Director of the Middle East Forum sometime around March 2019 until the present.

**Answer:  Denied.**

47.     Plaintiff, Caitriona Brady was forced to work in a hostile work environment due to Defendant, Greg Roman's severe and pervasive discrimination and harassment based upon Plaintiff, Caitriona Brady's sex and gender while Plaintiff, Caitriona Brady worked in the Philadelphia MEF office.

**Answer:  Denied.**

48.     Defendant, Greg Roman counted the number of times Plaintiff, Caitriona Brady used the rest room.

**Answer:  Denied.**

49.     Working with Defendant, Greg Roman meant that Plaintiff, Caitriona Brady would have to contend with Defendant, Greg Roman's inappropriate conduct and comments aimed toward the MEF female staff based upon their sex and gender.

**Answer:  Denied.**

50.     Employees who have worked with Defendant, Greg Roman who have stated that working with Defendant, Greg Roman meant having to contend with Defendant, Greg Roman's inappropriate conduct and comments including sexually inappropriate conduct and comments include but is in no way limited to: (1) Lisa Barbounis, (2) Patricia McNulty, (3) Marnie Meyer, (4) Tiffany Lee, (5) Caitriona Brady, (6) Delaney Yonchek, (7) Leah Merville, (8) Alana Goodman, (9) Eman Patel, (10) Samantha Mandalas, (11) Laura Frank, (12) Lara (last name unknown), (13) Rosie (last name unknown), and (14) Gabrielle Bloom.

**Answer:  Denied.**

51.     At all times relevant to this civil action, Defendant, Greg Roman was Plaintiff, Caitriona Brady's direct supervisor and used his supervisory and proxy authority to subject Plaintiff to unwelcome sex and gender discrimination.

**Answer:  Denied.**

52.     Defendant, Greg Roman used his position of Director of the MEF to make Plaintiff's work more difficult and forced Plaintiff to work longer hours by yelling at Plaintiff, Caitriona Brady in a violent and aggressive manner.

**Answer:  Denied.**

53.     The sex and gender discrimination to which Plaintiff, Caitriona Brady was subjected during her employment at MEF by Defendant, Greg Roman created a hostile work environment for Plaintiff, Caitriona Brady.

**Answer:  Denied.**

54.     Defendant, Greg Roman subjected almost every female employee who he supervised at MEF to unwelcome sex and gender discrimination.

**Answer:  Denied.**

55.     Defendant, Greg Roman specifically used his position as a proxy for MEF to recruit very attractive female employees and prey upon his female staff by subjecting the female staff to unwelcome sexual advances.

**Answer:  Denied.**

56.     Before Plaintiff, Caitriona Brady began her employment at MEF, there were two female employees of MEF named Laura Frank ("Laura") and Lara (last name unknown at this time) ("Lara").

**Answer:  Admitted.**

57.     Laura and Lara were employees of MEF Their supervisors included Defendant, Daniel Pipes and Defendant, Greg Roman.

**Answer:  Admitted.**

58.     Defendant, Greg Roman was the direct supervisor of Laura Frank and Lara (last name unknown).

**Answer:  Admitted.**

59.     Laura and Lara were subjected to severe and pervasive discrimination and harassment due to their sex and gender.

**Answer:  Denied.**

60.     Laura and Lara engaged in protected activity when they held discussions using private Google instant messaging and considered their options for legal recourse due to Defendant, Greg Roman's discrimination and harassment in the workplace. Laura and Lara were

subjected to retaliation when they opposed and/or reported the severe and pervasive discrimination to which Laura and Lara were subjected during their employment at MEF.

**Answer:  Denied.**

61.     Laura and Lara engaged in protected activity when they discussed and considered initiating legal action to vindicate their rights due to the severe and pervasive discrimination and harassment in the workplace to which they were subjected by Defendant, Greg Roman during their employment at MEF.

**Answer:  Denied.**

62.     Laura and Lara used instant Google messaging to discuss the unwelcome sexual harassment to which Defendant, Greg Roman subjected Laura and Lara during their employment at MEF.

**Answer:  Denied**

63.     Defendant, Greg Roman broke into Laura and Lara's computers after work one evening and discovered, by reading their private Google instant messaging, that Laura and Lara were currently discussing their legal options due to Defendant, Greg Roman's discrimination and harassment in the workplace due to sex and gender.

**Answer:  Denied.**

64.     Defendant, Greg Roman discussed the instant Google messages between Laura and Lara with Defendant, Daniel Pipes.

**Answer:  Denied**

65.     Together, Defendant, Greg Roman and Defendant, Daniel Pipes decided to terminate both Laura and Lara's employment. This termination constituted unlawful retaliation as Laura and Lara were terminated for engaging in protected activity.

**Answer: Denied. This allegation is a legal conclusion, and it is therefore deemed denied.**

66.     Defendant, Daniel Pipes and Defendant, Greg Roman refused to investigate the information that was discovered on Laura and Lara's private Google instant messaging. Because of Defendant, Greg Roman and Defendant, Daniel Pipe's refusal to investigate and remediate the issues raised by Laura and Lara, the hostile work environment at the MEF was permitted to continue, and Defendant, Greg Roman was authorized to continue his unlawful conduct which subjected female staff at the MEF to sex and gender discrimination.

**Answer: Denied.**

67.     Defendants did not initiate remedial measures as a result of the information discovered in Laura and Lara's instant Google messaging. MEF took no action to discover and remediate the severe and pervasive discrimination and harassment in the workplace.

**Answer: Denied**

68.     To the contrary, Defendant, Daniel Pipes and Defendant, Greg Roman have initiated, implemented and enforced policies designed to frustrate the congressional intent of federal, state and city anti-discrimination laws enacted to protect female employees from discrimination and harassment in the workplace.

**Answer: Denied.**

69.     Defendant, Daniel Pipes' objectives, policies and procedures have worked to protect Defendant, Greg Roman, despite the ongoing and increasing number of allegations of sex and gender discrimination and harassment aimed at the female staff in which Defendant, Greg Roman was implicated.

**Answer: Denied.**

70.     Defendant, Daniel Pipes has ignored and disregarded ongoing reports of discrimination and harassment involving Defendant, Greg Roman along with his duty to protect the female employees who work at the MEF.

**Answer:  Denied.**

71.     Accordingly, Defendant, Daniel Pipes' policies and actions have expressly communicated that Defendant, Greg Roman's discrimination and harassment of the female staff of MEF is allowed, sanctioned, permitted and condoned.

**Answer:  Denied.**

72.     Defendant, Greg Roman's discriminatory conduct and comments as Director of the MEF has occurred with express authorization of Defendant, Daniel Pipes.

**Answer:  Denied.**

73.     This authorization has resulted in MEF's female staff subjected to severe and pervasive sexual harassment discrimination and harassment based on sex and gender.

**Answer:  Denied.**

74.     Laura Frank and Lara (last name unknown) were unlawfully terminated in retaliation for discussing and considering reporting Defendant, Greg Roman's discrimination and harassment, in the workplace.

**Answer:  Denied.**

75.     Laura and Lara were simultaneously terminated from their employment with MEF due to their sex and gender and in retaliation for opposing and reporting discrimination and harassment in the workplace.

**Answer:  Denied.**

76.     Plaintiff, Caitriona Brady began her employment soon after Laura and Lara were unlawfully terminated from their employment by Defendant, Greg Roman and Defendant, Daniel Pipes.

**Answer:  Denied.**

77.     Defendant, Daniel Pipes has a history of discrimination of women based upon their sex and gender.

**Answer:  Denied.**

78.     Defendant, Greg Roman also has a history of discrimination and harassment of women based on their sex and gender.

**Answer:  Denied.**

79.     Female employees who worked with Defendant, Daniel Pipes have been subjected to ridicule, abuse, discrimination, and harassment due to their sex and gender.

**Answer:  Denied.**

80.     Rosie (last name unknown) ("Rosie") was a female employee who worked at The Middle East Forum.

**Answer:  Denied.**

81.     Rosie worked at The Middle East Forum about one year before Plaintiff, Caitriona Brady.

**Answer:  Denied.**

82.     Defendant, Greg Roman asked Rosie to transition to a position as an assistant to Greg Roman.

**Answer:  Denied.**

83.     Defendant, Greg Roman unlawfully targeted and terminated Rosie's employment due to Rosie's membership in a protected class with the authorization, consent, knowledge, and permission of Defendant, Daniel Pipes.

**Answer:  Denied.**

84.     Rosie abandoned her employment for MEF to avoid working closely with Defendant, Greg Roman.

**Answer:  Denied.**

85.     Prior to leaving her employment for MEF, Rosie said, "I will be dead before working for Greg Roman.''

**Answer:  Denied. Defendant lacks knowledge or information sufficient to form a belief about the truth of this allegation and it is therefore denied.**

86.     Rosie refused to work with Defendant, Greg Roman due to the severe and pervasive discrimination and harassment of female employees and the hostile work environment which Defendant, Greg Roman created for his female staff.

**Answer:  Denied.**

87.     Plaintiff, Caitriona Brady is not the only female employee who Defendant, Greg Roman supervised who has alleged that Defendant, Greg Roman subjected her to sex and gender discrimination and harassment.

**Answer:  Denied.**

88.     Defendant, Greg Roman has subjected multiple female employees to severe and pervasive sex and gender discrimination and harassment.

**Answer:  Denied.**

89.     Many of these female employees who have worked for Defendant, Greg Roman have filed Charges of Discrimination at the EEOC to report Defendant, Greg Roman's discrimination and harassment based upon sex and gender.

**Answer:  Admitted in part, denied in part. It is admitted that Plaintiff is not the only female employee of the Middle East Forum who has filed a Charge of Discrimination with the EEOC. All other allegations are denied.**

90.     Female employees who have reported Defendant, Greg Roman's sexual harassment, sexual misconduct, sexually inappropriate behavior including quid pro quo sexual harassment, stalking like behavior, and in some cases sexual assaults, include (1) Lisa Barbounis, (2) Plaintiff, Patricia McNulty, (3) Tiffany Lee, (4) Caitriona Brady, and (5) Delaney Yonchek.

**Answer:  Denied as stated. While some of the women identified in this allegation made "reports" regarding Mr. Roman's alleged misconduct, these reports were/are false. Defendant denies vehemently that Mr. Roman engaged in sexual harassment, sexual misconduct, sexually inappropriate behavior, *quid pro quo* harassment, stalking, and/or sexual assaults.**

91.     Tiffany Lee is yet another employee who Defendant, Greg Roman supervised and subjected to discrimination, harassment and sexual harassment due to sex and gender.

**Answer:  Denied.**

92.     Sometime around May 2016, Defendant, Greg Roman invited Tiffany Lee to visit his home in Margate for the weekend.

**Answer:  Denied.**

93.     Defendant, Greg Roman made sure to inform Tiffany Lee that Defendant, Greg Roman's wife and children would not be home during Tiffany Lee's visit to Defendant, Greg Roman's home.

**Answer:  Denied.**

94.     Defendant, Greg Roman subjected Tiffany Lee to inappropriate sexual advances and called and texted Tiffany Lee at inappropriate times at night and on the weekends.

**Answer:  Denied.**

95.     Tiffany Lee reported Defendant, Greg Roman's discrimination and harassment and sexual harassment.

**Answer:  Denied.**

96.     Defendant, Daniel Pipes refused to investigate.

**Answer:  Denied**

97.     Defendant, Daniel Pipes refused to initiate prompt remedial measures.

**Answer:  Denied**

98.     Tiffany Lee was subjected to a campaign of retaliation by Defendant, Greg Roman which culminated in Tiffany Lee's termination which occurred a short time after Tiffany Lee reported Defendant, Greg Roman's sexual harassment.

**Answer:  Denied.**

99.     Defendant, Greg Roman gave a former intern of the Middle East Forum named Gabrielle Bloom $1,500.00 in cash when interns do not receive compensation from the MEF.

**Answer:  Denied.**

100.     The intern voluntarily left the MEF and has stated that she left to avoid what she characterized as future, inappropriate sexual advances visited upon her by Defendant, Greg Roman. She said she could see it coming and left to avoid being put in that position.

**Answer:  Denied.**

101.     Defendant, Greg Roman's method of operation is that of a sexual predator.

**Answer:  Denied.**

102.     Defendant, Greg Roman uses his size, height, authority, and power to make female employees who work at the MEF feel intimidated, threatened and uncomfortable. This

works best with interns of the MEF who Defendant, Daniel Pipes targets despite their age and the clear imbalance of power.

**Answer:  Denied.**

103.    Defendant, Greg Roman has also subjected Plaintiff, Caitriona Brady's coworker, Marnie Meyer to severe and pervasive discrimination and harassment in the workplace based upon her sex and gender.

**Answer:  Denied.**

104.    Marnie Meyer is the Director of Human Resources for Defendant, MEF.

**Answer:  Denied.**

105.    Defendant, Greg Roman has harassed and discriminated against Marnie Meyer and has attempted to lure Marnie Meyer across national borders with the intention of using fraud, physical force and/or coercion in order to engage Marnie Meyer in sexual acts.

**Answer:  Denied.**

106.    Defendant, Greg Roman offered Marnie Meyer a trip to Israel and then expressly conditioned the trip to Israel on sharing the same Airbnb. Defendant, Greg Roman stated that Marnie Meyer could only accompany Defendant, Greg Roman if she agreed to share an Airbnb.

**Answer:  Denied as stated.  By way of further response, when Mr. Roman was planning the trip to Israel, the budget was limited and security was imperative.  It was necessary for Defendant to be cost-conscious.  Mr. Roman was fully transparent with Ms. Meyer when he explained to her that should she choose to travel to Israel, the accommodations would be a multi-bedroom Airbnb. Mr. Roman did not push Plaintiff to attend this trip; she eagerly volunteered. Mr. Roman only agreed to take Plaintiff after other MEF employees declined his invitation to go. Mr. Roman, on previous trips, stayed with other staff members at Airbnbs.  These were the same accommodations that were also offered to male employees.  Mr. Roman, on previous trips, stayed with other staff members at AirBnBs.**

107.     Defendant, Greg Roman refused to allow Marnie Meyer to travel across national borders to Israel unless Marnie Meyer shared the same living space with Defendant, Greg Roman.

**Answer:  Denied.**

108.     Defendant, Marnie Meyer refused to share an Airbnb with Defendant, Greg Roman due to the obvious implication of the inappropriate condition.

**Answer:  Denied.**

109.     Defendant, Greg Roman had already subjected Marnie Meyer to severe and pervasive discrimination and harassment in the workplace based upon sex and gender.

**Answer:  Denied.**

110.     Marnie Meyer was also subjected to discrimination and harassment from Defendant, Greg Roman.

**Answer:  Denied.**

111.     Marnie Meyer was harassed and sexually harassed by Defendant, Greg Roman to such an extent that Marnie Meyer had to notify Defendant, Greg Roman, "I am never going to sleep with you."

**Answer:  Denied.**

112.     Defendant, Greg Roman next asked Plaintiff, Caitriona Brady's coworker, Lisa Barbounis to travel to Israel with him. Defendant, Greg Roman provided the same condition to Lisa Barbounis.

**Answer:  Denied.**

113.     Defendant, Greg Roman provided Plaintiff, Caitriona Brady's coworker, Lisa Barbounis the same quid pro quo arrangement and conditioned the trip to Israel on sharing a living space with Defendant, Greg Roman.

**Answer:  Denied.**

114.    Defendant, Greg Roman informed Lisa Barbounis that she could only travel

across national borders to Israel if Lisa Barbounis agreed to share an Airbnb with him.

**Answer:  Denied as stated. By way of further response, when Ms. Barbounis asked if she could go with Mr. Roman to Israel, he told her that should she decide to come with him, they would be sharing a multi-bedroom AirBnb. Given certain budget constraints and security considerations, a multi bedroom Airbnb was the chosen arrangement which was made known to Plaintiff, who did not object.**

115.    Plaintiff's coworker, Lisa Barbounis has always wanted to travel to Israel.

**Answer:  Denied. Defendant's lack of knowledge or information sufficient to form a belief about the truth of this allegation and it is therefore denied.**

116.    Accordingly, Defendant, Greg Roman leveraged Lisa Barbounis's desire to see

Israel to lure her across national borders with the intent of using fraud, coercion and/or force to

engage Lisa Barbounis in sexual acts.

**Answer:  Denied.**

117.    Accordingly, in April 2018, Defendant, Greg Roman and Lisa Barbounis traveled

to Israel.

**Answer:  Admitted in part, denied in part.  It is admitted only that Mr. Roman and Plaintiff traveled to Israel in April 2018.  It is denied that the travel was according to the foregoing allegations.**

118.    An eighteen (18) year old intern named Leah Merville is yet another MEF intern

who Defendant, Greg Roman targeted and propositioned for sex.

**Answer:  Denied.**

119.    Defendant, Greg Roman sexually harassed Leah Merville by asking Leah

Merville to visit his hotel room to sign certain paperwork which Leah Merville required.

**Answer:  Denied.**

120.    Defendant, Greg Roman said, I will sign it and give it to you. The paperwork was apparently required paperwork for Leah Merville's completion of her internship.

**Answer:  Denied.**

121.    Leah Merville is a young girl who was an intern at MEF. Leah Merville is from France and traveled to Israel alone and lived in a strange country with no good friends or family nearby. Defendant, Greg Roman used his position of power and authority to pressure Leah Merville into engaging in sexual acts with him.

**Answer:  Admitted in part, denied in part.  It is admitted only that Ms. Merville was an intern for MEF and she is from France.  Defendant denies the remainder of this allegation.**

122.    Defendant, Greg Roman told Leah Merville to come to his hotel room because that is where he had the paperwork that Leah Merville needed signed.

**Answer:  Denied.**

123.    Defendant, Greg Roman also subjected Plaintiff, Caitriona Brady to discrimination based on sex and gender and was violently aggressive toward female staff members including Plaintiff, Caitriona Brady.

**Answer:  Denied.**

124.    Defendant, Greg Roman screamed at Plaintiff, Caitriona Brady.

**Answer:  Denied.**

125.    Defendant, Greg Roman yelled at Plaintiff, Caitriona Brady in a violent and aggressive manner.

**Answer:  Denied.**

126.    Defendant, Greg Roman did not treat Plaintiff's similarly situated male coworkers in this discriminatory, abusive, hostile and intolerable manner.

**Answer:  Denied.**

127.    Defendant, Greg Roman also subjected Plaintiff's female coworkers to discrimination and harassment due to their sex and gender.

**Answer:  Denied.**

128.    Defendant, Greg Roman also subjected coworker, Lisa Barbounis to severe and pervasive discrimination and harassment based upon her sex and gender.

**Answer:  Denied.**

129.    Defendant, Greg Roman also subjected Plaintiff's coworker, Patricia McNulty to severe and pervasive discrimination and harassment based upon her sex and gender.

**Answer:  Denied.**

130.    Defendant, Greg Roman also subjected Plaintiff's coworker, Delaney Yonchek to severe and pervasive discrimination and harassment based upon her sex and gender.

**Answer:  Denied.**

131.    Defendant, Greg Roman also subjected Plaintiff's coworker, Marnie Meyer to severe and pervasive discrimination and harassment based upon her sex and gender.

**Answer:  Denied.**

132.    At all times, Defendant, Greg Roman was Plaintiff Caitriona Brady's direct supervisor and held proxy authority as the number two executive of the MEF.

**Answer:  Denied.**

133.    Defendant, Greg Roman has subjected several other female employees who worked at the MEF to discrimination and harassment based upon their sex and gender.

**Answer:  Denied.**

134.    Defendant, Greg Roman developed, implemented and enforced policies, procedures and protocols designed to limit employees' access to President, Daniel Pipes.

**Answer:  Denied.**

135.     These policies which were strictly enforced which eliminated employees' ability to talk directly to Defendant, Daniel Pipes essentially set up Defendant, Greg Roman as the very top MEF employee who employees could go to for assistance.

**Answer:  Denied.**

136.     Defendant, Greg Roman developed and enforced these policies with the intention of limiting Plaintiff, Caitriona Brady's ability to report Defendant, Greg Roman's discrimination and harassment of the female staff based upon their sex and gender.

**Answer:  Denied.**

137.     Defendant, Greg Roman developed, implemented and enforced policies which were approved by Defendant, Daniel Pipes whereby employees including Plaintiff, Caitriona Brady were not allowed to go directly to Defendant, Daniel Pipes to express concerns or obtain assistance.

**Answer:  Denied.**

138.     Defendant, Greg Roman made inappropriate comments in the presence of Plaintiff, Caitriona Brady.

**Answer:  Denied.**

139.     Defendant, Greg Roman made comments about women's looks, saying, look how hot this one is, look how hot that one is.

**Answer:  Denied.**

140.     Defendant, Greg Roman made comments about a former employee named Tiffany Lee stating that she always had her boobs out and purposely did this to sexually entice him.

**Answer:  Denied.**

141.    Defendant, Greg Roman spoke about Tiffany Lee and described the way that Tiffany Lee looked and blamed Tiffany Lee and the way she dressed for tempting Defendant, Greg Roman.

**Answer:  Denied.**

142.    Defendant, Greg Roman subjected Plaintiff, Caitriona Brady to discrimination and harassment in the office based upon Plaintiff's sex and gender.

**Answer:  Denied.**

143.    Defendant, Greg Roman was highly insulting to Plaintiff, Caitriona Brady in the manner in which he spoke to Plaintiff about work and assignments. Plaintiff, Caitriona Brady reported Defendant, Greg Roman's demeaning, insulting, condescending to her direct supervisor, Lisa Barbounis, however, no investigation or remedial measures took place.

**Answer:  Denied.**

144.    Defendant, Greg Roman used his size and height to intimidate Plaintiff, Caitriona Brady.

**Answer:  Denied.**

145.    Defendant, Greg Roman entered Plaintiff, Caitriona Brady's office when she was not present and explored her computer including personal emails, chat history, and internet browser history.

**Answer:  Denied.**

146.    This is the same conduct which Defendant, Greg Roman subjected Laura and Lara and led to Laura and Lara's termination.

**Answer:  Denied.**

147.    Defendant, Greg Roman undertook to discriminate and harass female staff, including subjecting the female staff to sexual harassment and sexual misconduct with the express understanding that Defendant, Daniel Pipes would protect Defendant, Greg Roman.

**Answer:  Denied.**

148.    Defendant, Greg Roman subjected Plaintiff to severe and pervasive discrimination and harassment based upon her sex and gender.

**Answer:  Denied.**

149.    This discrimination and harassment was evident in the way that Defendant, Greg Roman spoke to Plaintiff, the assignments he required Plaintiff to complete, the tone of voice he used, body language, expressions, use of language and cursing, and other threatening conduct.

**Answer:  Denied.**

150.    Defendant, Greg Roman created a hostile work environment for Plaintiff, Caitriona Brady. The work environment was severe and pervasive.

**Answer:  Denied.**

151.    Plaintiff reported the discrimination and harassment to which she was subjected by Defendant, Greg Roman.

**Answer:  Denied.**

152.    Plaintiff, Caitriona Brady notified Marnie Meyer who was the Director of Human Resources.

**Answer:  Denied.**

153.    Marnie Meyer prepared a five-page handwritten letter addressed to Daniel Pipes and provided the letter on November 1, 2018.

**Answer:  Admitted in part, denied in part. It is admitted only that Ms. Meyer prepared a handwritten letter addressed to Mr. Pipes. The remainder of this**

**allegation is denied because the letter is a written document the contents of which speak for themselves.**

154.   Marnie Meyer notified Defendant, Daniel Pipes that Defendant, Greg Roman was using his supervisory authority as Director of the MEF to "railroad" other female employees including Plaintiff's coworker, Lisa Barbounis and "set her up for failure."

**Answer:  Denied. Ms. Meyer's letter is a written document the contents of which speak for themselves.**

155.   Marnie Meyer also reported a hostile work environment which was created by Defendant, Greg Roman.

**Answer:  Denied.**

156.   Marnie Meyer also reported to Defendant, Daniel Pipes that Defendant, Greg Roman had sex with an MEF intern named Leah Merville. Marnie Meyer reported that Leah Merville was eighteen (18) years old at the time, that Defendant, Greg Roman had sex with Leah Merville in a hotel room in Israel, and at a time when Leah Merville needed Defendant, Greg Roman to sign paperwork for her. After reporting this to Defendant, Daniel Pipes, Marnie Meyer reported that this was just "the tip of the iceberg."

**Answer:  Admitted in part, denied in part. It is admitted only that Ms. Meyer reported the above-described conduct to Mr. Pipes. The remaining allegations are denied.**

157.   Marnie Meyer also explained that she reported Defendant, Greg Roman's unlawful discrimination and harassment with handwritten letters out of fear because Defendant, Greg Roman used the knowledge he gained as Director of the MEF, including secure passwords, to spy on employees emails and files. Importantly, this is what led to Laura Frank and Lara (last name unknown)'s termination.

**Answer:  Denied as stated. At some point Ms. Meyer reported what she contended to be improper conduct by Mr. Roman. She further told Mr. Pipes why she was doing it by hand-written letters, rather than e-mail. Defendant denies that Mr.**

**Roman's conduct was improper; deny that Ms. Meyer's complaints were valid; and deny all other allegations of this paragraph.**

158.   Accordingly, Marnie Meyer handwrote her reports of discrimination to

Defendant, Daniel Pipes because she was scared to create an electronic record that could be

accessed by Defendant, Greg Roman.

**Answer:  Denied. Defendant lacks knowledge or information sufficient to form a belief about the truth of this allegation and it is therefore denied.**

159.   Marnie Meyer's fear of creating an electronic record was directly due to

Defendant, Greg Roman's conduct including stalking and spying.

**Answer:  Denied.**

160.   Several female employees of the Middle East Forum spoke to Defendant, Daniel

Pipes on November 1, 2018.

**Answer:  Admitted in part, denied in part. It is admitted only that employees spoke to Mr. Pipes on November 1, 2018 regarding Mr. Roman's conduct. Defendant denies all allegations of discrimination and harassment.**

161.   Marnie Meyer made a report to notify Defendant, Daniel Pipes about Defendant,

Greg Roman's sexual harassment, sexual misconduct, and/or gender and sex discrimination.

Marnie Meyer turned in a five page, detailed, handwritten report of Defendant, Greg Roman's

unlawful conduct and comments.

**Answer:  Admitted in part, denied in part.  It is admitted only that Ms. Meyer contacted Mr. Pipes about some concerns regarding Mr. Roman. Defendant denies that her reports were about alleged conduct that, in any way, constituted sexual harassment, sexual misconduct, and/or discrimination.**

162.   Lisa Barbounis made a report to notify Defendant, Daniel Pipes about Defendant,

Greg Roman's sexual harassment, sexual misconduct, and/or gender and sex discrimination and

specifically reported what occurred during the Israel trip.

**Answer:  Admitted in part, denied in part.  It is admitted only that Ms. Barbounis contacted Mr. Pipes about some concerns regarding Mr. Roman. Defendant denies**

that her reports were about alleged conduct that, in any way, constituted sexual harassment, sexual misconduct, and/or discrimination.

163.    Plaintiff, Caitriona Brady made a report to notify Defendant, Daniel Pipes about

Defendant, Greg Roman's sexual harassment, sexual misconduct, and/or gender and sex

discrimination.

**Answer: Admitted in part, denied in part. It is admitted only that Ms. Brady contacted Mr. Pipes about some concerns regarding Mr. Roman. Defendant denies that her reports were about alleged conduct that, in any way, constituted sexual harassment, sexual misconduct, and/or discrimination.**

164.    Delaney Yonchek made a report to notify Defendant, Daniel Pipes about

Defendant, Greg Roman's sexual harassment, sexual misconduct, and/or gender and sex

discrimination.

**Answer: Admitted in part, denied in part. It is admitted only that Ms. Yonchek contacted Mr. Pipes about some concerns regarding Mr. Roman. Defendant denies that her reports were about alleged conduct that, in any way, constituted sexual harassment, sexual misconduct, and/or discrimination.**

165.    Prior to November 1, 2018, Defendant, Daniel Pipes was already on express and

actual notice regarding Defendant, Greg Roman's sexual harassment, sexual misconduct and sex

and gender discrimination.

**Answer: Denied.**

166.    Prior to November 1, 2018, and by at least December 2016, Defendant, Daniel

Pipes was notified about a Charge of Discrimination filed with the Equal Employment

Opportunity Commission alleging that Defendant, Greg Roman subjected female employees to

sexual harassment and sexual misconduct.

**Answer: Admitted in part, denied in part. It is admitted only that prior to November 1, 2018, a Charge of Discrimination had been filed with the Equal Employment Opportunity Commission. A Charge of Discrimination is a written document the contents of which speak for themselves therefore the remainder of this allegation is denied.**

167.    The Charge of Discrimination was filed by former MEF employee, Tiffany Lee.

**Answer:  Admitted in part, denied in part. Admitted as to the fact that Tiffany Lee filed a Charge of Discrimination; Defendant denies as to the factual basis and validity of the charge.**

168.    Defendant, Daniel Pipes was also on notice regarding the allegations of Gabrielle Bloom, another former MEF intern who left MEF to get away from Defendant, Greg Roman.

**Answer:  Denied.**

169.    Regarding both Tiffany Lee and Gabrielle Bloom, Defendant, Greg Roman said that any sexual harassment they experienced was their fault because they invited it by the way they dressed.

**Answer:  Denied.**

170.    Defendant, Daniel Pipes was also on notice about Laura Frank and Lara (last name unknown) find their conversations around Defendant, Greg Roman's unlawful conduct and comments.

**Answer:  Denied as stated.  The assertion of "conversation around Defendant, Gregg Roman's unlawful conducted" is too vague and ambiguous for Defendant to admit or deny. It does not state enough specificity in order for Defendant to frame an adequate response.**

171.    Despite the reports concerning (1) Tiffany Lee, (2) Gabrielle Bloom, (3) Leah Merville. (4) Laura Frank, (5) Lara (last name unknown), (6) Patricia McNulty, (7) Lisa Barbounis, (8) Marnie Meyer, (9) Plaintiff, Caitriona Brady, (10) Delaney Yonehek, (11) Samantha Mandates, (12) Eman Patel, and (13) Rosie (last name unknown), Defendant, Daniel Pipes made comments such as, "I am just going to have to go with Greg Roman's word." It was decisions like this made by Defendant, Daniel Pipes to protect Defendant, Greg Roman that provided Defendant, Greg Roman the opportunity to subject Plaintiff to severe and pervasive discrimination and harassment in the workplace based upon her sex and gender.

**Answer:  Denied.**

172.    Defendant, Daniel Pipes was in possession of and had express and actual knowledge about numerous reports of Defendant, Greg Roman's sexual harassment and sexual misconduct to which Defendant, Greg Roman subjected female employees who worked at The Middle East Forum.

**Answer:  Denied.**

173.    Defendant, Daniel Pipes remained loyal to Defendant, Greg Roman, who has been accused of preying on female employees of The Middle East Forum for at least the past five (5) years.

**Answer:  Denied.**

174.    At every opportunity, Defendant, Daniel Pipes has introduced policies, procedures, and protocols designed to punish the female employees of The Middle East Forum who have claimed abuse and sexual abuse, while rewarding the individual accused of abusing these same female employees.

**Answer:  Denied.**

175.    Had Defendant, Daniel Pipes considered protecting his female staff by acting in accordance with federal, state and local anti-discrimination laws, Plaintiff, Caitriona Brady would never have been subjected to severe and pervasive discrimination and harassment in the workplace by Defendant, Greg Roman.

**Answer:  Denied.**

176.    Due to Defendant, Daniel Pipes refusal to investigate and remediate earlier reports of discrimination and harassment in the workplace, Plaintiff, Caitriona Brady and many other of Plaintiff's female coworkers were subjected to a campaign of discrimination and harassment due to their sex and gender.

**Answer:  Denied.**

177.    Had Defendant, Daniel Pipes acted in accordance with laws aimed at protecting women from sexual harassment in the workplace, he would have investigated Defendant, Greg Roman as early as 2016 and prompt remedial measures would have been implemented to ameliorate and/or eliminate completely the future sex and gender discrimination which the female staff of the MEF were subjected to thereafter.

**Answer:  Denied.**

178.    Defendant, Daniel Pipes held a group meeting on November 1, 2018, during which, Plaintiff, Caitriona Brady, Lisa Barbounis, Marnie Meyer, Patricia McNulty, and Delaney Yonchek all expressed grave concerns regarding Defendant, Greg Roman's discrimination and harassment of the female staff.

**Answer:  Admitted in part, denied in part. Defendant admits that a meeting occurred on November 1, 2018 but deny all other allegations in this paragraph.**

179.    During the November 1, 2018 meeting, Defendant, Daniel Pipes was notified about the sexual assault in Washington D.C., during the AIPAC Conference concerning Plaintiff, Caitriona Brady's coworker, Patricia McNulty.

**Answer:  Admitted in part, denied in part. It is admitted only that on November 1, 2018, Mr. Pipes learned of this alleged incident. Defendant denies the occurrence of any sexual assault or improper conduct having occurred in Washington D.C. during the AIPAC conference and the remainder of this allegation is therefore denied.**

180.    Defendant, Daniel Pipes learned that Defendant, Greg Roman forcefully, violently, and aggressively picked Patricia McNulty up by her upper thigh and back-side, dropped her on his lap, and suggested that Ms. McNulty engage in sexual acts with Defendant, Greg Roman.

**Answer:  Admitted in part, denied in part.  It is admitted only that on November 1, 2018, Mr. Pipes learned of the alleged sexual assault.  Defendant denies the**

34

**occurrence of any sexual assault having occurred in Washington D.C. during the AIPAC conference and the remainder of this allegation is therefore denied.**

181.   During the November 1, 2018 meeting, Lisa Barbounis reported the sexual harassment and sexual misconduct and sexual assault that occurred across national borders in Israel when Defendant, Greg Roman subjected Lisa Barbounis to unwelcome lewd sexual advances including unwelcome sexual touching.

> **Answer:  Admitted in part, denied in part.  It is admitted only that Plaintiff reported an incident that allegedly occurred when she was in Israel with Mr. Roman. Defendant denies that this report was accurate. Defendant denies the occurrence of any sexual harassment, sexual misconduct, sexual assault, and unwelcome sexual advances having occurred during Mr. Roman's and Plaintiff's time in Israel. The remainder of this allegation is therefore denied.**

182.   On November 1, 2018, The Middle East Forum's female staff informed Defendant, Daniel Pipes about Defendant, Greg Roman's ongoing severe and pervasive discrimination and harassment in the workplace including Defendant, Greg Roman's decision to proposition an eighteen (18) year old intern for sex in a hotel room in Israel while holding paperwork the intern required over her head.

> **Answer:  Admitted in part, denied in part.  It is admitted only that female employees alleged discrimination and harassment occurring in the workplace. Defendant denies all allegations of workplace discrimination and harassment.  The remainder of this allegation is therefore denied.**

**183.**   Defendant, Daniel Pipes responded to the reports of sexual harassment, sexual misconduct, and sexual assaults by telling Plaintiff, Caitriona Brady, Lisa Barbounis. Marnie Meyer, Patricia McNulty. and Delaney Yonchek that Defendant, Greg Roman's conduct was not that big a deal.

> **Answer:  Denied.**

184.   Defendant, Daniel Pipes suggested that because priests who molest children were permitted by the Catholic Church to remain priests, Defendant, Greg Roman should be permitted

to continue his employment at the MEF. Defendant, Daniel Pipe indicated that the policy which established the standard for terminating the Director of the Middle East Forum was not even reached if· was proven that the Director of the Middle East Forum had molested minor children.

**Answer:  Denied.**

185.    Defendant, Daniel Pipes said, "'priests have been accused of more and not lost their jobs."

**Answer:  Denied.**

186.    Defendant, Daniel Pipes did not apologize to any of his female staff for the years of abuse described and reported by his female staff on November 1, 2018.

**Answer:  Denied as stated. There was no abuse to apologize for.**

187.    Defendant, Daniel Pipes notified the female staff of The Middle East Forum including Plaintiff, Caitriona Brady, Marnie Meyer, Lisa Barbounis, Patricia McNulty, and Delaney Yonchek that The Middle East Forum maintains standards which inform when discipline for sexual harassment in warranted.

**Answer:  Admitted.**

188.    Defendant, Daniel Pipes then told his female staff of The Middle East Forum that Defendant, Greg Roman's conduct and comments over the years had not risen to the level where discipline was warranted. He said that Defendant, Greg Roman's conduct had not reached the MEF standards for discipline.

**Answer:  Denied.**

189.    Defendant, Daniel Pipes' conclusion that Defendant, Greg Roman's conduct and comments had not risen to the level where discipline was warranted was based upon MEF policies which Defendant, Daniel Pipes claimed supported his conclusions.

**Answer:  Denied.**

190.    Defendant, Daniel Pipes' conclusions that Defendant, Greg Roman's conduct and comments had not risen to the level where discipline was warranted was in response to learning that coworker, Patricia McNulty had been sexually assaulted in Washington D.C. during the AIPAC Conference.

**Answer: Denied.**

191.    Defendant, Daniel Pipes' conclusions that Defendant, Greg Roman's conduct and comments had not risen to the level where discipline was warranted was in response to learning that a female staff member of The Middle East Forum named Marnie Meyer had been sexually harassed.

**Answer: Denied.**

192.    Defendant, Daniel Pipes' conclusions that Defendant, Greg Roman's conduct and comments had not risen to the level where discipline was warranted was in response to learning that a female staff member of The Middle East Forum, Lisa Barbounis, had been subjected to unwelcome sexual touching, sexual assault, sexual harassment, and quid pro quo sexual proposition.

**Answer: Denied.**

193.    Defendant, Daniel Pipes' conclusions that Defendant, Greg Roman's conduct and comments had not risen to the level where discipline was warranted was in response to learning that the Director of the MEF, Defendant, Greg Roman engaged an eighteen (18) year old female intern named Leah Merville in sexual intercourse in his hotel room, and that he had lured Ms. Merville to the hotel room with the promise of signing important paperwork which Ms. Merville required.

**Answer: Denied.**

194.    Accordingly, Defendant, Daniel Pipes initiated no discipline.

**Answer:  Denied as stated.**

195.    Saturday, November 3, 2018, Plaintiff, Caitriona Brady received an email from Defendant. Daniel Pipes instructing Plaintiff to attend a group meeting scheduled Monday, November 5, 2018.

> **Answer:  Denied. Any referenced email is a written communication the contents of which speak for themselves and Plaintiff's characterization thereof is denied.**

196.    This memorandum was sent as a group email to Plaintiff and her coworkers.

> **Answer:  Denied. Any referenced email is a written communication the contents of which speak for themselves and Plaintiff's characterization thereof is denied.**

197.    Defendant, Greg Roman was included in the email and invited to attend the group meeting.

> **Answer:  Denied. Any referenced email is a written communication the contents of which speak for themselves and Plaintiff's characterization thereof is denied.**

198.    Defendant, Greg Roman was specifically asked to attend the group meeting.

> **Answer: Admitted.**

199.    It was not until Monday, November 5, 2018 when a call was made to Defendant, Greg Roman asking that he stay home. This call was made due to the female staff members all expressing extreme discomfort at the idea of holding a group meeting about Defendant, Greg Roman with Defendant, Greg Roman.

> **Answer:  Admitted in part, denied in part.  Defendant admits that Mr. Roman was later asked to not come of the office on Monday, November 5, 2018.  The remainder of this allegation is denied.**

200.    Defendant, Greg Roman's sister attended the meeting in Defendant, Greg Roman's place and spent the entire meeting arguing in support of her brother.

> **Answer:  Admitted in part, denied in part.  It is admitted only that MEF employee Stacy Roman is Mr. Roman's sister and that she was present at the meeting.  The characterization of the substance of Ms. Roman's communications is denied.**

38

201.    Defendant, Greg Roman's sister said that the woman who Defendant, Greg Roman sexually harassed were at fault for wearing provocative attire.

**Answer:  Denied.**

202.    The November 5, 2018 meeting was indicative of Defendant, Daniel Pipes utter failure to bring his organization into compliance with state and federal anti-discrimination laws.

**Answer:  Denied.**

203.    After the November 5, 2018 meeting- Defendant, Daniel Pipes decided that Defendant, Greg Roman would retain his position, title, pay, and employment with the Middle East Forum.

**Answer:  Denied.**

204.    Defendant, Daniel Pipes notified Plaintiff, Caitriona Brady that Defendant, Greg Roman would work from home and that Plaintiff would no longer directly report to Defendant Greg Roman.

**Answer:  Denied.**

205.    Defendant, Daniel Pipes' claimed that Plaintiff, Caitriona Brady would no longer be forced to work with Defendant, Greg Roman.

**Answer:  Denied.**

206.    Defendant, Daniel Pipes did not enforce his self-prescribed remedial measures and Plaintiff, Caitriona Brady was forced to continue working with Defendant, Greg Roman.

**Answer:  Denied.**

207.    For the next few months, Plaintiff, Caitriona Brady was forced to continue working with Defendant, Greg Roman.

**Answer:  Denied.**

208.    The only change was that Defendant, Greg Roman did not visit the office.

**Answer:  Denied.**

209.    Defendant, Greg Roman's work duties, responsibilities, and authority remained unchanged.

**Answer:  Denied.**

210.    Plaintiff, Caitriona Brady continued to be subjected to discrimination and harassment due to her sex and gender. The big difference was that Defendant, Greg Roman set out on a mission of retaliation aimed at the female employees who reported his unlawful conduct.

**Answer:  Denied.**

211.    Plaintiff was still subjected to the same discrimination and harassment in the workplace.

**Answer:  Denied.**

212.    In fact, the discrimination and harassment got worse, as after the November 5, 2018 meeting, Defendant, Greg Roman unleashed a campaign of retaliation against Plaintiff, Caitriona Brady, Lisa Barbounis, Marnie Meyer, Patricia McNulty, and Delaney Yonchek.

**Answer:  Denied.**

213.    Defendant, Greg Roman openly voiced his retaliatory intent.

**Answer:  Denied.**

214.    Defendant, Greg Roman targeted the employees who Defendant, Greg Roman called "the usurpers."

**Answer:  Denied.**

215.    Defendant, Greg Roman also called the female staff who reported his sexual harassment and sexual misconduct, "backstabbers."

**Answer:  Denied.**

216.    Defendant, Greg Roman notified Defendant, Mathew Bennett, "they are all usurpers and I will never work with usurpers."

**Answer:  Denied.**

217.    Even more recently, Defendant, Greg Roman announced on a radio show that "all usurpers should be crushed."

**Answer:  Denied. Defendant denies allegations that are inconsistent with the recording. Mr. Roman does not recall making this comment, but if he did, it was in reference to terrorist organizations.**

218.    Plaintiff was forced to continue working with Defendant, Greg Roman.

**Answer:  Denied.**

219.    Plaintiff was still forced to take orders from Defendant, Greg Roman.

**Answer:  Denied.**

220.    Defendant, Greg Roman was still the Director of the Middle East Forum.

**Answer:  Admitted.**

221.    Defendant, Greg Roman began a campaign of retaliation aimed at Plaintiff, Caitriona Brady and the other female employees in the office who reported discrimination and harassment including Marnie Meyer, Lisa Barbounis, Delaney Yonchek, and Patricia McNulty.

**Answer:  Denied**

222.    Sometime around March 2019, Defendant, Daniel Pipes announced that Defendant, Greg Roman would return to full responsibilities as Director of the MEF.

**Answer:  Admitted in part denied in part. It is admitted only that in March 2019 Mr. Pipes met with Plaintiff, Ms. Meyer, and Ms. McNulty about Mr. Roman's role at MEF. The remainder of this allegation is denied. Mr. Pipes held this meeting because Ms. Barbounis and Ms. McNulty specifically requested that Mr. Roman be permitted to assume his former role and responsibilities.**

223.    After this meeting Defendant, Greg Roman began working directly with the staff again, including the female staff who Defendant, Greg Roman had systemically victimized.

**Answer:  Denied. Plaintiff asked for Mr. Roman's return, he never victimized her.**

224.    Defendant, Greg Roman was brought back on what was labeled a "strict probationary period." Defendant, Daniel Pipes promised strict rules, guidelines, scrutiny, and oversight. None of this occurred.

**Answer:  Denied.**

225.    Defendant, Greg Roman was moved back to a position where he would interact directly with the female staff who he prayed upon, abused, and harassed.

**Answer:  Denied.**

226.    Plaintiff, Caitriona Brady never agreed to working with Defendant, Greg Roman again and informed management of MEF that Plaintiff did not want to work with Defendant, Greg Roman again. Plaintiff, Caitriona Brady objected to Defendant, Greg Roman's return and was scared, nervous, and upset that he was allowed to return after he spent years subjecting female staff including the interns al MEF to severe and pervasive sexual harassment, sexual misconduct, quid pro quo sexual propositions, sexual assaults, and sex and gender-based discrimination.

**Answer:  Denied.**

227.    The rules and guidelines agreed upon were intended to protect the female staff who Defendant, Greg Roman had systematically victimized and sexually abused and harassed.

**Answer:  Denied.**

228.    These rales and guidelines were quickly disregarded by Defendant, Daniel Pipes and Defendant, Greg Roman.

**Answer:  Denied.**

229.    At no time was Defendant, Greg Roman on a probationary period. Defendant, Daniel Pipes brought Defendant, Greg Roman back and allowed Defendant, Greg Roman to resume all responsibilities as the number 2 person in charge of the MEF.

**Answer: Denied.**

230.    Shortly after Defendant, Greg Roman's return, Plaintiff, Caitriona Brady noted the discrimination and harassment and retaliation.

**Answer: Denied.**

231.    The female staff and Plaintiff, Caitriona Brady were subjected to a continuing hostile work environment including retaliation due to their reporting and opposing Defendant, Greg Roman's discrimination and harassment in the workplace.

**Answer: Denied.**

232.    The female staff including Plaintiff, Caitriona Brady attempted to discuss the fact that bringing Defendant, Greg Roman back was not working, and that Defendant, Greg Roman was actively disregarding the guidelines and rules that the female staff and Defendant, Daniel Pipes agreed upon as the conditions for Defendant, Greg Roman's return.

**Answer: Denied.**

233.    Defendant, Daniel Pipes continued his same policy employed for at least the last five (5) years, of ignoring, disregarding, and refusing to take action in response to reports of discrimination, harassment and retaliation concerning Defendant, Greg Roman.

**Answer: Denied.**

234.    Defendant, Daniel Pipes and Defendant, Greg Roman used the female staffs dedication to the MEF mission to convince female staff to tolerate discriminatory and harassing working conditions.

**Answer: Denied.**

235.    At all times Defendant, Greg Roman retained the position of Director of the Middle East Forum.

**Answer:  Admitted in part, denied in part. Mr. Roman retained the title of Director, but his responsibilities and benefits were diminished beginning in November 2018.**

236.    At all times, Plaintiff was forced to continue working at the Middle East Forum with Defendant, Greg Roman.

**Answer:  Denied.**

237.    During the March 2019 meeting, Defendant, Daniel Pipes announced that he was going to eliminate the purported safe measures initiated to protect the female staff from Defendant, Greg Roman's severe and pervasive discrimination, harassment, and retaliation.

**Answer:  Denied.**

238.    Accordingly, since March 2019, Plaintiff, Caitriona Brady has been subjected to increased interactions with Defendant, Greg Roman.

**Answer:  Denied.**

239.    This was around the same time when Plaintiff, Caitriona Brady learned that Defendant, Greg Roman was spreading information about Plaintiffs father. Defendant, Greg Roman was actively informing MEF staff that Plaintiff, Caitriona Brady's father and Marnie Meyer were engaged in an adulterous affair.

**Answer:  Denied.**

240.    Defendant. Greg Roman began a rumor that Marnie Meyer was having a sexual relationship with Plaintiffs father.

**Answer:  Denied.**

241.    Plaintiff, Caitriona Brady is an employee at the Middle East Forum who holds the position Development Associate.

**Answer:  Denied.**

242.    When Defendant, Greg Roman first learned that another allegation of sexual harassment was reported, he did not yet know the details of the allegation and did not yet know it related to his claims involving Marnie Meyer and Plaintiff's father.

**Answer:  Denied.**

243.    Accordingly, Defendant, Greg Roman and Defendant, Mathew Bennett began a guessing game where they attempted to guess what and who the allegation involved.

**Answer:  Denied.**

244.    Defendant, Greg Roman incorrectly guessed that the sexual harassment allegation involved a former intern named Gabrielle Bloom who Defendant, Greg Roman purportedly paid when MEF policy does not include payment to interns.

**Answer:  Denied.**

245.    Defendant, Greg Roman subjected two female interns to quid pro quo sexual harassment.

**Answer:  Denied.**

246.    Just days after the March 2019 meeting when Defendant, Daniel Pipes announced that he was eliminating the measures designed to protect female staff from Defendant Greg Roman, Defendant, Greg Roman called Defendant, Mathew Bennett.

**Answer:  Denied.**

247.    Defendant, Greg Roman informed Matthew Bennett, "now that I am back, I am going to begin searching for a replacement for the Director of Development."

**Answer:  Denied.**

248.     This was the position that one of Plaintiff's coworkers named Patricia McNulty held. Patricia McNulty was one of the employees who along with Plaintiff, Caitriona Brady reported Defendant, Greg Roman's unlawful conduct toward female staff.

**Answer:  Denied.**

249.     Defendant, Greg Roman's statement about coworker, Patricia McNulty indicated his intent to retaliate against the employees who he called "the usurpers." These were the women who reported Defendant, Greg Roman's discrimination and harassment.

**Answer:  Denied.**

250.     Defendant, Greg Roman initiated a campaign of discrimination, harassment, and retaliation against Plaintiff in an effort to effect Plaintiffs termination.

**Answer:  Denied. Defendant further denies that Plaintiff was terminated.**

251.     Defendant, Daniel Pipes utterly disregarded all reports of ongoing discrimination, harassment and retaliation involving Defendant, Greg Roman,

**Answer:  Denied.**

252.     If anything, Defendant, Daniel Pipes has continued to provide Defendant, Greg Roman more access, authority, and opportunity with which to achieve his discriminatory and retaliatory agenda.

**Answer:  Denied.**

253.     Despite allowing Defendant, Greg Roman to return on probationary status, Defendant, Daniel Pipes continued to protect, shield, indemnify and assist Defendant, Greg Roman from any and all impact caused by his severe and pervasive discrimination and harassment in the workplace against female staff.

**Answer:  Denied.**

254.     Defendant, Daniel Pipes has allowed, permitted, sanctioned and condoned Defendant, Greg Roman's sexual harassment and sex and gender discrimination and has never considered a permanent solution,

**Answer: Denied.**

255.     Accordingly, Defendant, Daniel Pipes has condoned, sanctioned, permitted, and allowed the discrimination, harassment, and retaliation to continue.

**Answer: Denied.**

256.     Defendants have made Plaintiff's working conditions so onerous, abusive, and intolerable that no person in Plaintiff's shoes should be expected to continue working under such conditions.

**Answer: Denied.**

257.     Plaintiff was constructively discharged from her employment due to the return of Defendant, Greg Roman and the severe and pervasive hostile work environment which Plaintiff, Caitriona Brady was subjected to and due to the campaign of retaliation resulting from Plaintiff's opposition to and reports of discrimination and harassment in the workplace.

**Answer: Denied.**

258.     The unlawful acts, comments and conduct described above all involved the same individual and the same pattern of behavior which includes sexual harassment, sexual misconduct, and sex and gender discrimination to which the female employees of MEF have been subjected to for at least the last five (5) years.

**Answer: Denied.**

259.     Defendants and Defendant, Daniel Pipes and Defendant, Greg Roman have been subjecting female staff of The Middle East Forum to discrimination and harassment and retaliation due to their sex and gender for years.

**Answer:  Denied.**

260.    Plaintiff, Caitriona Brady was highly aware that reporting discrimination and harassment to Defendant, Daniel Pipes or other employees at the MEF was futile and would probably result in retaliation.

**Answer:  Denied.**

261.    Plaintiff, Caitriona Brady was aware of Tiffany Lee, Gabrielle Bloom, Leah Merville, Lisa Barbounis, Laura Frank, Lara (last name unknown), Rosia (last name unknown), Samantha Mandalas, and Eman Patel and the fact that little or nothing was done to protect any of them pursuant to reports of discrimination and harassment in the workplace.

**Answer:  Denied.**

262.    Moreover, Plaintiff, Caitriona Brady was acutely aware that some employees who had made reports of discrimination and harassment in the workplace had ended up terminated shortly after making the report.

**Answer:  Denied.**

263.    Defendant, Greg Roman was allowed to continue subjecting female staff of the MEF to discrimination and harassment for years without any corrective action until November 2018; when reports of at least six female employees were made simultaneously. Even then Defendant, Daniel Pipes said that Defendant, Greg Roman's conduct and comments did not rise to the level where discipline was warranted and Defendant, Greg Roman was permitted to continue his employment with MEF as Director of MEF.

**Answer:  Denied.**

264.    Accordingly Plaintiff, Caitriona Brady maintained a reasonable belief that reporting sex and gender discrimination and harassment would be futile or result in retaliation.

**Answer:  Denied.**

265.    The way in which Defendant, Daniel Pipes ignored reports of discrimination and harassment in the workplace concerning Defendant, Greg Roman created a reasonable inference that any individual report of sexual harassment, sexual misconduct, or sex and gender discrimination by Defendant, Greg Roman would be futile and would most likely result in retaliation.

**Answer:  Denied.**

266.    Plaintiff, Caitriona Brady was made aware of Laura Frank and Lara's (last name unknown) termination which resulted when Laura and Lara discussed Defendant, Greg Roman's discrimination and. harassment in the workplace. This information was essentially a warning not even to discuss reporting discrimination and harassment in the workplace.

**Answer:  Denied. Defendant lacks knowledge or information sufficient to form a belief about the truth of this allegation and it is therefore denied.  Furthermore, Defendant denies all allegations of discrimination and harassment.**

267.    Plaintiff, Caitriona Brady was made aware of Tiffany Lee's attempts to vindicate her rights in 2016 which resulted in Tiffany Lee's termination.

**Answer:  Denied.**

268.    For these reasons Plaintiff, Caitriona Brady was reasonably dissuaded from reporting Defendant, Greg Roman's discrimination and harassment.

**Answer:  Denied. Defendant lacks knowledge or information sufficient to form a belief about the truth of this allegation and it is therefore denied.**

269.    It helped Plaintiff feel more protected when Marnie Meyer, Lisa Barbounis, Patricia McNulty, and Delaney Yonchek all came together to report Defendant, Greg Roman's unlawful conduct and comments in November 2018.

**Answer:  Denied.**

270.    Defendants used to employ a female individual named Eman Patel.

**Answer:  Admitted.**

271.    Eman Patel was a gay Muslim female who worked at Middle East Forum.

**Answer:  Admitted.**

272.    Eman Patel was harassed by Defendant, Greg Roman until she was constructively discharged. Defendant, Greg Roman's objective was to make Eman Patel's working conditions so intolerable that she decided to discontinue her employment in a manner which Defendant, Greg Roman and Defendant, Daniel Pipes considered voluntary.

**Answer:  Denied.**

273.    Both Defendant, Daniel Pipes and Defendant, Greg Roman harassed Eman Patel until she quit.

**Answer:  Denied.**

274.    Because of the number of protected classes that she could be considered to fall within, Defendant, Daniel Pipes and Defendant, Greg Roman called Eman Patel "a walking lawsuit."

**Answer:  Denied.**

275.    Defendant, Daniel Pipes approved of the plan to harass and make Eman Patel's work life so intolerable that she quit on her own.

**Answer:  Denied.**

276.    Defendant, Daniel Pipes and Defendant, Greg Roman used Eman Patel's gender to harass and discriminate.

**Answer:  Denied.**

277.    Eman Patel is yet another member of the MEF female staff who was subjected to discrimination and harassment due to her sex and gender.

**Answer:  Denied.**

278.    Samantha Mandalas was another female employee of the Middle East Forum.

**Answer:  Admitted.**

279.    Samantha Mandates said in her exit interview "if I would have been a male I would have gotten more respect."

**Answer:  Denied.**

280.    Samantha Mandalas was subjected to discrimination and harassment due to her sex and gender.

**Answer:  Denied.**

281.    Plaintiff, Caitriona Brady was subjected to discrimination and harassment by Defendants, Middle East Forum, Greg Roman, Daniel Pipes, and Matt Bennett based upon Plaintiff's sex and gender.

**Answer:  Denied.**

282.    The discrimination and harassment to which Plaintiff was subjected was severe and pervasive and created a hostile work environment.

**Answer:  Denied.**

283.    Plaintiffs supervisors were Greg Roman, Daniel Pipes, and Matt Bennett.

**Answer:  Denied. This allegation is a legal conclusion, and it is therefore deemed denied.**

284.    During Plaintiffs employment, Defendants, including Defendant. Greg Roman, subjected Plaintiff to discrimination and harassment by cursing, yelling, screaming, shouting, insulting, belittling, disparaging, and verbally abusing female staff including Plaintiff, Caitriona Brady.

**Answer:  Denied.**

285.    Plaintiff, Caitriona Brady reported Defendant, Greg Roman's severe and pervasive discrimination and harassment and was subjected to retaliation.

**Answer:  Denied.**

286.    Defendant. Greg Roman created a hostile work environment and then implemented and enforced policies whereby Plaintiff and the other female staff were denied the ability to report the severe and pervasive discrimination and harassment in the workplace.

**Answer:  Denied.**

287.    Defendant, Greg Roman initiated, implemented and enforced a policy whereby female staff members were not allowed to interact with the President of the Middle East Forum: Defendant, Daniel Pipes.

**Answer:  Denied.**

288.    Defendant, Greg Roman actively and willfully worked to subjugate female employees of the Middle East Forum through policies designed to impede, obstruct, end prevent female employees from vindicating their rights pursuant to Title VII of the Civil Rights Act.

**Answer:  Denied.**

289.    Defendant. Greg Roman ordered female employees including Plaintiff never to speak directly With President. Daniel Pipes.

**Answer:  Denied.**

290.    In November 2018, Plaintiff, Caitriona Brady notified and reported Defendant, Greg Roman's discrimination and harassment of the female staff during a meeting with Defendant, Daniel Pipes when almost every female employee of the Middle East Forum came forward to report the severe and pervasive discrimination and harassment to which female staff were subjected by Defendant, Greg Roman.

**Answer:  Denied.**

52

291.    The female staff reported Defendant, Greg Roman's harassment, bullying, and his intolerable, onerous, and abusive conduct and comments designed to discriminate against female employees of the Middle East Forum,

**Answer:  Denied.**

292.    The meeting, which was sometime around November 5,2018, included the female staff and Defendant. Daniel Pipes. The meeting was held to report Defendant, Greg Roman's discrimination and harassment in the workplace. Those in attendance included: Patricia McNulty, Lisa Barbounis, Delaney Yonchek, Defendant, Matt Bennett. Stacy Roman, Thelma Prosser. Marnie Meyer, Mark Fink, Defendant, Daniel Pipes, and Plaintiff, Caitriona Brady.

**Answer:  Denied.**

293.    Stacy Roman is Defendant Greg Roman's sister. Her presence at a meeting held to report and begin investigations into Defendant. Greg Roman's discrimination and harassment in the workplace is indicative of Defendants ' utter and total disregard for the anti-discriminatory intent promulgated by Title VII.

**Answer:  Denied. Admitted in part, denied in part.  It is admitted only that MEF employee Stacy Roman is Mr. Roman's sister and that she was present at the meeting.  The characterization of the substance of Ms. Roman's communications is denied. Defendant denies all allegations of discrimination and harassment.**

294.    Throughout the entire meeting, while the female staff who were subjected to severe and pervasive discrimination and harassment in the workplace attempted to report Defendant Greg Roman's unlawful conduct, Defendant, Greg Roman's sister, Stacy Roman was belligerent and interjected argumentative comments.

**Answer:  Admitted in part, denied in part.  It is admitted only that MEF employee Stacy Roman is Mr. Roman's sister and that she was present at the meeting.  The characterization of the substance of Ms. Roman's communications is denied.**

295.    For example. Stacy Roman blamed the women who were subjected to discrimination and harassment based upon their sex and gender stating that they should not have worn such short skirts.

**Answer: Denied.**

296.    Notwithstanding, Defendant. Daniel Pipes and house counsel, Mark Fink refused to ask Stacy Roman to leave an order to provide the female staff who were subjected to discrimination and harassment with a safe environment in which to make their reports.

**Answer: Denied.**

297.    Moreover, Daniel Pipes actually invited Defendant, Greg Roman to the meeting, although he did not attend. Defendant, Greg Roman was asked not to intend within an hour before the meeting started.

**Answer: Denied.**

298.    Defendant, Daniel Pipes coerced the female staff to sign nondisclosure agreements ("NDA") as a condition to attending the meeting and having reports of discrimination and harassment considered for the first time.

**Answer: Denied.**

299.    Defendant, Daniel Pipes would not allow the female staff including Plaintiff, Caitriona Brady to report discrimination and harassment in the workplace until she signed an NDA.

**Answer: Denied.**

300.    Defendant, Greg Roman set up cameras around the office and harassed the female staff by monitoring everything they did, including Plaintiff, Caitriona Brady.

**Answer: Denied.**

301.    These cameras are still operational today and Defendant, Greg Roman continues to harass the female staff using surveillance equipment.

**Answer:  Denied.**

302.    Defendant, Greg Roman used the surveillance equipment to monitor female staff and how often and how long they used the bathroom.

**Answer:  Denied.**

303.    Defendant, Greg Roman made it known that he was watching the female staff through the video system. For example, Defendant, Greg Roman would make comments to employees that were working about the work they were presently performing such as, "didn't you already input that one?"

**Answer:  Denied.**

304.    Defendant, Greg Roman's message was designed to harass, scare, intimidate, and female staff by sending instant-messages about what female members of the staff were working on.

**Answer:  Denied.**

305.    Defendant, Greg Roman told female employees how many times they used the restroom in a given day.

**Answer:  Denied.**

306.    For example, he would alter the female staff to the number of times that they used the bathroom in a given day.

**Answer:  Denied.**

307.    Defendant, Greg Roman actively attempted to engage inters of the MEF in sexual relationships.

**Answer:  Denied.**

55

308.    Defendant Greg Roman uses his position and power as a proxy for the MEF to engage interns of the MEF in sexual relationships.

**Answer:  Denied.**

309.    Because of Defendant, Greg Roman's history of discrimination and harassment in the workplace, to which female staff at MEF have been subjected. Plaintiff, Caitriona Brady is afraid to be alone with Defendant Greg Roman.

**Answer:  Denied.**

310.    Plaintiff, Caitriona Brady sent text messages to her supervisor and stated that Plaintiff was afraid to be alone with Defendant, Greg Roman.

**Answer:  Denied. Defendant has insufficient knowledge or information to admit or deny this allegation, and therefore denies the same.**

311.    Matthew Bennett refused to conduct an investigation. No corrective action was taken.

**Answer:  Denied.**

312.    Defendant, Greg Roman forces female employees to sit next to him at his desk, instead of across from him.

**Answer:  Denied.**

313.    Defendant, Greg Roman maneuvers himself to get inappropriately close to the female staff including Plaintiff, Caitriona Brady.

**Answer:  Denied.**

314.    Defendant, Greg Roman spoke in a sexually suggestive way to and about female staff and it was common knowledge that Defendant, Greg Roman used his position as Director of the Middle East Forum to prey upon the female staff and interns. Defendant, Greg Roman spoke about his sexual conquests to employees of the MEF and female members of the MEF staff

including Plaintiff, Caitriona Brady were afraid to work with or be alone with Defendant, Greg Roman.

**Answer:  Denied.**

315.    Defendant, Greg Roman continued to divulge inappropriate sexual information to female staff.

**Answer:  Denied.**

316.    For example, Defendant, Greg Roman spoke about his girlfriend giving him blowjobs.

**Answer:  Denied.**

317.    Defendant, Greg Roman gave money to an intern named Gabrielle Bloom which is against Middle East Forum policy.

**Answer:  Denied.**

318.    Defendant, Greg Roman started inappropriate sexual rumors involving staff members including, Plaintiff, Caitriona Brady.

**Answer:  Denied.**

319.    Defendant, Greg Roman informed people in the office that Plaintiff's father was having a sexual affair with another staff member.

**Answer:  Denied.**

320.    Defendant, Daniel Pipes also maintained sexual relationships with employees including an employee named Brook Goldstein.

**Answer:  Denied.**

321.    At present, Plaintiff is subjected to a severe and pervasive atmosphere of discrimination and harassment based upon her sex and gender and in retaliation for Plaintiffs reports and opposition to discrimination and harassment.

**Answer:  Denied.**

322.    Plaintiff continues her attempts to report and obtain assistance from Defendant, Daniel Pipes.

**Answer:  Denied.**

323.    Defendant, Daniel Pipes continues to protect, shield, indemnify and assist Defendant, Greg Roman from any and all consequences caused by his severe and pervasive discrimination and harassment.

**Answer:  Denied.**

324.    Accordingly, Defendant, Daniel Pipes has condoned, sanctioned, permitted, and allowed the discrimination, harassment, and retaliation to continue.

**Answer:  Denied.**

325.    Defendants have made Plaintiffs working conditions so onerous, abusive, and intolerable that no person n Plaintiffs shoes should be expected to continue working under such conditions.

**Answer:  Denied.**

326.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

**Answer:  Denied.**

327.    The severe and pervasive discrimination and harassment in the workplace has caused Plaintiff to suffer an acerbation and aggravation of any preexisting condition involving emotional distress.

**Answer:  Denied.**

328.    As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries. As a result of

Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

**Answer:  Denied.**

329.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and wil1 continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation to which such employment entailed.

**Answer:  Denied.**

330.    Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**Answer:  Denied.**

331.    Plaintiff has further experienced severe emotional and physical distress.

**Answer:  Denied.**

332.    Plaintiff has suffered from severe emotional distress which has caused physical manifestations as a result of Defendants' unlawful and severe and pervasive conduct and comments.

**Answer:  Denied.**

333.    Any pre-existing condition which Plaintiff may have maintained prior to her employment for Defendant, MEF was acerbated and aggravated by the severe and pervasive discrimination and harassment in the workplace.

**Answer:  Denied.**

334.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

**Answer:  Denied. This allegations is a conclusion of law to which no response is required and it is therefore denied.**

335.    Defendants have exhibited a pattern and practice of not only discrimination but also retaliation. At all times material Defendants refused to investigate or take appropriate remedial action in response to Plaintiffs complaints of discrimination, harassment and hostile work environment.

**Answer:  Denied.**

336.    Defendants discriminatory conduct was severe and pervasive, and created a hostile work environment for Plaintiff.

**Answer:  Denied. The allegations is a conclusion of law to which no response is required and it is therefore denied.**

337.    The above are just some examples of some of the discrimination and retaliation to which Defendants subjected Plaintiff.

**Answer:  Denied.**

338.    Plaintiff claims a pattern and practice of discrimination, claims continuing violations, and makes all claims herein under the continuing violations doctrine. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

**Answer:  Denied.**

## FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII
## HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT
### (all corporate Defendants only)

339.    Plaintiff, Caitriona Brady, hereby incorporates all allegations contained in paragraphs one (1) through three-hundred-thirty-eight (338) as fully as if they were set forth at length. Denied. Defendants incorporate the answers and denials set forth above as if they were set forth at length.

**Answer:  Denied. Defendant incorporates the answers and denials set forth above as fully as if they were set forth at length**.

340.    Plaintiff was also constructively discharged, however, Plaintiff will amend her complaint when Plaintiff receives a second Right to Sue letter from the EEOC. When Plaintiff filed her first Charge of Discrimination, Plaintiff remained employed with the Middle East Forum. Accordingly. Plaintiff did not include facts related to Plaintiffs constructive discharge ii her first Charge of Discrimination because it had not yet occurred. Plaintiff has since filed a second Charge of Discrimination with the EEOC and reserves the right to amend her Complaint to include an additional disparate treatment claim related to the hostile work environment, retaliation and Plaintiffs constructive discharge that occurred after Plaintiff filed her first Charge of Discrimination.

**Answer:  Denied. The allegation is as a conclusion of law to which no response is required and it is therefore denied.**

341.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et. seq.,* as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in-whole or in part, upon an employee's race, color, and/or national origin.

**Answer:  Denied. The allegation is as a conclusion of law to which no response is required and it is therefore denied.**

342.    SEC. 20Q0e-2 *[Section 703]* states as follows:

(a)    Employer practices

It shall be an unlawful employment practice for an employer -

(1)    to fail or refuse to hire or to discharge an individual, or otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2)    to limit, segregate., or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

343.    Defendants engages in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et. seq.*. by discriminating against Plaintiff because of her sex and gender.

344.    Plaintiff, Caitriona Brady was subjected to sex and gender discrimination which was severe and pervasive.

**Answer:  Denied. The allegation is as a conclusion of law to which no response is required and it is therefore denied.**

345.    Plaintiff claims that she was subjected to a hostile work environment based upon the severe and pervasive discrimination and harassment in the workplace.

**Answer:  Denied.**

346.    Plaintiff was also terminated from her employment based upon Plaintiffs sex and gender.

**Answer:  Denied**

347.    Defendants engaged in several acts of discrimination and harassment that were so severe that a single act was sufficient to create a hostile work environment.

**Answer:  Denied. The allegation is as a conclusion of law to which no response is required and it is therefore denied.**

348.    Defendants also engaged on ongoing, continuous, daily abuse which was so pervasive as to create a hostile work environment.

**Answer:  Denied. The allegation is as a conclusion of law to which no response is required and it is therefore denied. Defendant denies all allegations of abuse and hostile work environment.**

## SECOND CAUSE OF ACTION
## RETALIATION UNDER TITLE VII
### (against corporate Defendants only)

349.    Plaintiff, Caitriona Brady, hereby incorporates all allegations contained in

paragraphs one (1) through three-hundred-forty-eight (348) as fully as if they were set forth at

length.

**Answer:  Denied. Defendant incorporates the answers and denials set forth above as fully as if they were set forth at length.**

350.    Title VII of the Civil Rights Act of 1962, as amended, 42 U.S.C § 2000e-3(a)

provides that it shall be unlawful employment practice for an employer: "(1) to…discriminate

against any of his employees…because [s]he has opposed any practice made an unlawful

employment practice by this subchapter, or because [s]he has made a charge, testified, assisted,

or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

**Answer:  Denied. The allegation is as a conclusion of law to which no response is required and it is therefore denied.**

351.    Defendants engaged IN unlawful employment practices prohibited by 42 U.S.C, §

2000e *et. seq.* by retaliating against Plaintiff with respect to the terms, conditions, and/or

privileges of his employment because of her opposition to and reporting of the unlawful

employment practices of Defendants.

**Answer:  Denied. The allegation is as a conclusion of law to which no response is required and it is therefore denied.**

352.    Plaintiff continued to oppose the severe and pervasive discrimination and

harassment in the workplace and even submitted a written statement to report the discrimination

and harassment in the workplace.

**Answer:  Denied.**

353.    Defendants refused to investigate Plaintiff's reports of discrimination and harassment .n the workplace.

**Answer:  Denied.  Defendant denies all allegations of discrimination and harassment.**

354.    Defendants refused to initiate prompt corrective actions.

**Answer:  Denied.**

355.    Accordingly, Defendants permitted, sanctioned, condoned, and allowed the discrimination and harassment to continue.

**Answer:  Denied. Defendant denies all allegations of discrimination and harassment.**

356.    Any corrective action taken by Defendants was not enforced and Plaintiff was subjected to a campaign of severe and pervasive retaliation which also created a hostile work environment.

**Answer:  Denied. The allegation is as a conclusion of law to which no response is required and it is therefore denied.  Defendant denies all allegations of retaliation and a hostile work environment.**

### THIRD CAUSE OF ACTION
### <u>NEGLIGENT HIRING, RETENTION, SUPERVISION</u>
### (against corporate Defendants only)

357.    Plaintiff, Caitriona Brady, hereby incorporates all allegations contained in paragraphs one (1) through four-hundred-fifty-six (456) as fully as if they were set forth at length.

**Answer:  Denied. Defendant incorporates the answers and denials set forth above as fully as if they were set forth at length.**

358.    Pennsylvania recognizes claims for negligent hiring, retention and supervision when an employer has failed to exercise reasonable care in the selection or training of its employees.

**Answer:  Denied. The allegation is as a conclusion of law to which no response is required and it is therefore denied.**

359.    To maintain such an action, plaintiff must establish all elements of negligence, including causation.

**Answer:  Denied. The allegation is as a conclusion of law to which no response is required and it is therefore denied.**

360.    Plaintiff has indeed established above the elements of negligence. Defendant, Middle East Forum owed a duty of care to its employees to use such care in the hiring, retention and supervision of its employees.

**Answer:  Denied. The allegation is as a conclusion of law to which no response is required and it is therefore denied.**

361.    An employer may be negligent for the failure to exercise reasonable care in determining an employee's propensity for violence in an employment situation where the violence would harm a third person.

**Answer:  Denied, the allegation is as a conclusion of law to which no response is required and it is therefore denied.**

362.    In these situations, a plaintiff must establish that the employer breached a duty to protect others against a risk of harm.

**Answer:  Denied, the allegation is as a conclusion of law to which no response is required and it is therefore denied.**

363.    When the plaintiff has no special relationship with the employer (i.e., as in the case of a stranger), the duty owed may be inferred from the general duty imposed on all persons not to place others at risk through their actions.

**Answer:  Denied.**

364.    The scope of this duty is limited to those risks that are reasonably foreseeable by the actor in the circumstances of the case.

**Answer:  Denied, the allegation is as a conclusion of law to which no response is required and it is therefore denied.**

365.    Plaintiff has alleged a history of sexual harassment, sexual abuse, and/or sex and gender discrimination by Defendant. Greg Roman to which the female employees working at the Middle East Forum have been subjected. Plaintiff has alleged facts that indicate that Defendant, Middle East Forum had sufficient knowledge to be fully cognizable of the risk of harm that Defendant, Greg Roman posed to Plaintiff. Caitriona Brady.

**Answer:  Denied, the allegation is as a conclusion of law to which no response is required and it is therefore denied. Defendant denies all allegations of sexual harassment, sexual abuse, and/or discrimination.**

366.    Defendant. Middle East Forum breached its duty of care and this directly caused the sexual assault of Plaintiff, Caitriona Brady.

**Answer:  Denied, the allegation is as a conclusion of law to which no response is required and it is therefore denied.**

367.    Defendant, Middle East Forum breaches its duty of reasonable care and this directly led to the severe and pervasive sexual harassment to which Plaintiff, Caitriona Brady was subjected by Defendant, Greg Roman.

**Answer:  Denied, the allegation is as a conclusion of law to which no response is required and it is therefore denied. Defendant denies all allegations of sexual harassment.**

368.    As a result of Defendant, Greg Roman's conduct. Plaintiff, Caitriona Brady suffered a physical injury.

**Answer:  Denied, the allegation is as a conclusion of law to which no response is required and it is therefore denied.**

## PRAYER FOR RELIEF

WHEREFORE, Defendant denies that Plaintiff is entitled to any relief whatsoever and, as such, respectfully requests that the Court enter judgment in its favor. Defendant further requests that the Court award its costs and fees expended in this action and any other relief it deems just and proper.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Amended Complaint fails, in whole or in part, to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred in whole or in part by her failure to mitigate damages.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred in whole or in part by the exclusive remedy provisions of the Pennsylvania Workers' Compensation Act.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of after-acquired evidence.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because Middle East Forum had in place at all applicable times a policy prohibiting discrimination, harassment, and retaliation and exercised reasonable care to prevent and promptly correct any such conduct.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by her unreasonable failure to take advantage of preventative and corrective opportunities, including those provided under applicable discrimination, harassment and/or retaliation policies.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred in whole or in part by the doctrines of laches, fraud, waiver, estoppel, and/or unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

The claims asserted in the Amended Complaint are barred in whole or in part because in every employment decision challenged herein, Middle East Forum acted based on legitimate, non-discriminatory, non-retaliatory factors.

## NINTH AFFIRMATIVE DEFENSE

Defendant at all times acted in good faith, based upon a reasonable belief that it was in compliance with all legal requirements.

## TENTH AFFIRMATIVE DEFENSE

Some or all of the claims in the Amended Complaint are barred in whole or in part by the applicable statute of limitations.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because she failed to exhaust administrative remedies.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by her failure to mitigate her claimed damages.

## <u>THIRTEENTH AFFIRMATIVE DEFENSE</u>

The relief is requested by Plaintiff is barred by the doctrine of unclean hands.

## <u>RESERVATION OF RIGHTS</u>

Defendant has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, defenses available.  Defendant reserves the right to amend or assert additional defenses which may become known during the course of discovery or revealed during pretrial proceedings.

WHEREFORE, Defendant respectfully requests that this Court grant judgment in Defendant's favor and against plaintiff on all Counts of the Amended Complaint, and for such further relief as the Court deems just and proper.

<div style="margin-left: 40%;">

Respectfully submitted,

</div>

Dated:  January 16, 2020

<div style="margin-left: 40%;">

COZEN O'CONNOR

s/David J. Walton
David J. Walton (PA#86019)
Leigh Ann Benson (PA #319406)
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
P: (215) 665-2000

*Attorneys for Defendant*
*The Middle East Forum*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served upon Seth Carson, Esq. a true and correct copy of the within Answer with Affirmative Defenses via ECF filing.


*/s/ David J. Walton*
David J. Walton, Esquire

**COZEN O'CONNOR**

*Attorney for Defendant,*
*The Middle East Forum*

Dated: January 16, 2020